**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony Dean JOHNSON,
Defendant–Appellant.**

No. 94–6138.

United States Court of Appeals,
Tenth Circuit.

Dec. 6, 1994.

M. Jay Farber, Asst. U.S. Atty. (Vicki Miles–LaGrange, U.S. Atty., with him on the brief), Oklahoma City, OK, for plaintiff-appellee.

Don J. Gutteridge, Jr., of Kerr, Irvine, Rhodes and Ables, Oklahoma City, OK, for defendant-appellant.

Before BALDOCK and EBEL, Circuit Judges, and O'CONNOR, Senior District Judge.*

EARL E. O'CONNOR, Senior District Judge.

A jury found defendant Anthony Dean Johnson guilty of one count of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846, and six counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Defendant was sentenced to 121 months on each count, to run concurrently.

Defendant appeals his conviction and sentence on four grounds. He asserts that the trial court erred: (1) in admitting the testimony of Rhonda Nowell; (2) in admitting the defendant's incriminating statements; (3) in finding the evidence was sufficient to sustain his conviction of conspiracy to distribute methamphetamine; and (4) in enhancing his sentence based upon his possession of a firearm in connection with a drug offense. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in all respects.

The facts will be developed as we consider the points on appeal.

---

* The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation.

## I. Rhonda Nowell's Testimony

Defendant contends that the court abused its discretion in allowing the government to present the testimony of Rhonda Nowell, the co-defendant's sister. Specifically, he argues that her testimony did not relate to the conspiracy alleged in the indictment and was therefore irrelevant. He maintains that her testimony was admitted in violation of Federal Rule of Evidence 404(b) because it was used to show the defendant's "bad character," and did not fall within any of the exceptions enumerated in Rule 404(b). Additionally, defendant claims any probative value of the testimony was outweighed by its prejudicial effect, and should have been excluded under Federal Rule of Evidence 403.

The trial court permitted Rhonda Nowell to testify that: she received methamphetamine from the defendant during the time frame of the conspiracy while visiting her brother's home; that on one occasion the defendant gave her a gram of methamphetamine and asked her to trade it for some marihuana; that defendant asked her if she knew of anyone who wanted to buy methamphetamine from him; that defendant had admitted to her that he was selling methamphetamine to her brother and was receiving it from someone in Shawnee; and that she and the defendant had engaged in conversations concerning a drug debt her brother owed defendant. The trial court admitted the testimony using 404(b) analysis, and instructed the jury on the limited purposes for which the testimony could be used.

■ This court reviews the trial court's decision to admit evidence of prior acts for abuse of discretion. Fed.R.Evid. 404(b); *United States v. Fitzherbert*, 13 F.3d 340, 343 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1627, 128 L.Ed.2d 351 (1994). In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court articulated the criteria for admission of "similar act" evidence. In accordance with *Huddleston*, we have ruled that a defendant is presumed to be protected against undue prejudice if the following four requirements are met:

"(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted."

*United States v. Poole*, 929 F.2d 1476, 1481 (10th Cir.1991) (quoting *United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.), *cert. denied*, —— U.S. ——, ——, 112 S.Ct. 238, 239, 116 L.Ed.2d 194 (1991)).

■ We find that the trial court did not abuse its discretion in admitting the evidence under 404(b). Its decision met all four requirements for protection against unfair prejudice.

First, the evidence was offered for a proper purpose. The theory of the defense at trial centered on defendant's lack of knowledge and involvement in the drug activities charged in the indictment. The testimony was offered to show defendant knew of the methamphetamine distributions.

Second, the testimony of Ms. Nowell was highly relevant to the charges of distribution and conspiracy because it concerned the defendant's prior distributions of methamphetamine, the defendant's solicitation of the witness to find buyers for the methamphetamine, and the defendant's previous discussions with the witness regarding a "drug debt." Ms. Nowell's testimony allowed the jury to reasonably conclude that the defendant involved himself in the distribution of methamphetamine, and conspired to possess and distribute the drug.

Third, the district court implicitly determined that the probative value of the testimony was not substantially outweighed by its potential for unfair prejudice. The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value. *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir.1989).

■] The fourth requirement was satisfied when the trial court instructed the jury, at the time the evidence was admitted, to consider the testimony only for the limited purpose of showing the defendant's motive, intent, knowledge, absence of mistake or accident, or the existence of a scheme or plan. This cautionary instruction, in combination with the court's instruction at the conclusion of the testimony, was sufficient to protect the defendant from unfair prejudice. *See United States v. Pettit,* 903 F.2d 1336, 1339 (10th Cir.), *cert. denied,* 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990).

■ Even if the trial court's application and analysis of 404(b) was in some way deficient, we believe the evidence was admissible as a part of the conspiracy itself. Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. *United States v. Orr,* 864 F.2d 1505, 1510 (10th Cir.1988). An uncharged act may not be extrinsic if: (1) it was part of the scheme for which a defendant is being prosecuted, *see Orr,* 864 F.2d at 1510, or (2) it was "inextricably intertwined" with the charged crime such that a witness' testimony "would have been confusing and incomplete without mention of the prior act." *United States v. Record,* 873 F.2d 1363, 1372 n. 5 (10th Cir.1989) (quoting *United States v. Richardson,* 764 F.2d 1514, 1521–22 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985)). All of the events recounted by Ms. Nowell in her testimony occurred within the time frame of the conspiracy, and could be considered "part of the scheme for which defendant [was] being prosecuted." *See Orr* at 1510. Moreover, the uncharged acts described by Ms. Nowell were not "extrinsic" to the conspiracy, because the evidence concerning the prior acts was "inextricably intertwined" with the evidence of the charged crime. It formed an "integral and natural part of the witness' accounts of the circumstances surrounding the offense[ ] for which the defendant was indicted." *United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir.1982).

## II. Defendant's Incriminating Statements

The defendant urges that his constitutional rights under *Miranda,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were violated when the trial court admitted his statement to officers after he had invoked his right to remain silent.

Before trial, the district court held a hearing on defendant's motion to suppress statements he had made at the time of his arrest. Michael Bakios, a Special Agent with the United States Drug Enforcement Administration, testified that he and other agents had executed a search warrant at the defendant's residence in Stringtown, Oklahoma. Once inside the defendant's residence, Bakios encountered and arrested the defendant, seated him on the bed in his bedroom, and immediately read him his Miranda rights. Defendant acknowledged he understood those rights. Thereafter, Bakios advised defendant that he was under arrest for conspiracy to distribute methamphetamine, that the DEA had been purchasing methamphetamine from Ronny Nowell, and that the DEA knew defendant had been supplying Nowell with methamphetamine. Bakios informed defendant that, based upon the drug quantity the DEA expected to prove at trial, defendant's sentence under the federal sentencing guidelines would be from five to forty years imprisonment. Bakios told defendant that his cooperation might result in a lesser sentence, but he did not threaten, coerce, or promise defendant anything, nor did any of the other law enforcement officers.

Bakios then asked defendant whether he would waive his rights and talk to the officers. Defendant responded that he felt he needed his attorney. Bakios ceased asking questions, and did not try to re-initiate questioning. Bakios then began to assist in the search of the residence, and defendant remained seated in the bedroom while the officers conducted the search.

During the search, and in the presence of defendant, the officers discovered a loaded rifle next to the bed, and an ounce of methamphetamine on a desk near the bed. Defendant commented that the gun did not belong to him, but to Ronny Nowell. Bakios then reminded defendant of his decision to remain silent. On at least two occasions, Bakios informed defendant that he wished

defendant would remain silent and let the officers conduct the search.

Bakios testified that after the officers found the methamphetamine, defendant asked "What, exactly, can I do to help myself out?" In response, Bakios told defendant that because he had requested an attorney, Bakios could not talk to him unless he wanted to speak without an attorney. Defendant then stated he wanted to talk without an attorney. Bakios asked defendant if he was sure of this, and defendant responded that he was. Bakios stated that there was no doubt in his mind that defendant voluntarily initiated the conversation and indicated he did not want an attorney.

Bakios then proceeded to question defendant. In response to Bakios' questions, defendant admitted he was distributing methamphetamine to Ronny Nowell. He also admitted that he had made trips to Oklahoma City to deliver methamphetamine, and that Nowell had come to defendant's residence to obtain methamphetamine. Defendant stated that he had made a $3400.00 deposit in his checking account, and that he had received the money from Nowell in exchange for two ounces of methamphetamine. Bakios testified that an undercover agent had previously purchased a quantity of methamphetamine from Nowell for $3400.00.

After defendant waived his rights, Bakios further informed defendant that, because the gun was found loaded in close proximity to the drugs, there existed the possibility that "a 924(c) could be filed against him." Bakios told the defendant that if such a charge were filed, the court could sentence him to five years for the gun, to run consecutive to the five years for the drugs. Bakios told defendant that it was possible that the charge would not have to be filed, that it was an option used in federal court as a bargaining tool by the prosecution to encourage cooperation by a defendant. Bakios testified he did not promise defendant that the charge would not be filed if he cooperated.

Serene Cox, a police officer with the Oklahoma City Police Department, Narcotics Division, also testified at the hearing on the motion to suppress. Cox testified that she participated in the execution of the search warrant at defendant's residence. She was present in the room when Bakios read defendant his Miranda rights, and when defendant waived his rights. She corroborated the events as recounted by Bakios.

The defendant also testified at the suppression hearing. His version of the events conflicted with that recounted by Bakios and Cox. Defendant testified that immediately after the officers entered his home, he was arrested and advised of his Miranda rights. After he had invoked his right to an attorney, Bakios and the other officers attempted to question him about the source of his drugs. Upon discovering the methamphetamine, the officers told defendant that if he would cooperate he would not go to jail, and that otherwise, he would receive a five-year sentence for the drugs, with an automatic additional five years for the loaded gun.

At the conclusion of the testimony, the judge denied the motion to suppress. In denying the motion, the trial judge weighed the credibility of the witnesses, and stated on the record that he believed the testimony of Special Agent Bakios and Officer Cox. The judge concluded that the defendant's waiver of his previously-invoked rights to remain silent and to counsel was knowing and voluntary, and not the product of any coercion on the part of any of the law enforcement officers present at the scene.

■■■ In reviewing a denial of a motion to suppress, the trial court's findings of fact must be accepted by the appellate court unless clearly erroneous. *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir. 1990). Moreover, the credibility of witnesses and the weight to be given the evidence, together with inferences, deductions and conclusions drawn from the evidence, are to be determined by the trial judge. *United States v. Walker*, 933 F.2d 812, 815 (10th Cir.1991).

■■■ The Fifth Amendment privilege against self incrimination "is fully applicable during a period of custodial interrogation." *Colorado v. Spring*, 479 U.S. 564, 572, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987) (quoting *Miranda v. Arizona*, 384 U.S. at 460–61, 86 S.Ct. at 1620–21). This constitutional guar-

antee, however, may be waived "provided the waiver is made voluntarily, knowingly, and intelligently." *Colorado,* 479 U.S. at 572, 105 S.Ct. at 2841 (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612).

When a Miranda violation is alleged to have occurred, the burden of proof rests with the government to prove the validity of the waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). This inquiry "is a legal question requiring independent factual determination." *United States v. Hernandez,* 913 F.2d 1506 (10th Cir.1990) (quoting *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405 (1985)). The court must determine that:

> "First, the relinquishment of the right must be voluntary in the sense that it was a product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."

*Hernandez,* 913 F.2d at 1509 (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)).

An accused's Fifth Amendment right to counsel attaches when he invokes that right during a custodial interrogation. *Miranda v. Arizona,* 384 U.S. at 444–45, 86 S.Ct. at 1612. Once an attorney is requested, all questioning must cease until counsel is provided unless the right to counsel is waived. *Miranda,* 384 U.S. at 473–74, 86 S.Ct. at 1627–28; *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). An accused can waive his previously invoked right to counsel if he initiates further communications with the law enforcement officials. *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85; *Oregon v. Bradshaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2834–35, 77 L.Ed.2d 405 (1983). However, the government must show that the defendant effectively waived his Fifth Amendment right to counsel. *Oregon,* 462 U.S. at 1044–45, 103 S.Ct. at 2834–35. *See*

*also United States v. Comosona,* 848 F.2d 1110 (10th Cir.1988).

Defendant claims that once he invoked his right to counsel, the agents should have removed him from the premises. He argues that leaving him at the scene while searching for the evidence was tantamount to interrogation. Defendant additionally contends he was coerced because the agents told him at the time of the search that if he cooperated he would not go to jail.

Defendant's reliance upon *Hancock v. White,* 378 F.2d 479 (1st Cir.1967), and *United States v. Kelsey,* 951 F.2d 1196 (10th Cir.1991), is misplaced. In *Hancock,* the court held that any postindictment incriminating statements made by a defendant, even though they were not procured by interrogation but were volunteered, should be excluded. Here, defendant's statement was made at the time of his arrest in October, before he was indicted in November. In *Kelsey,* the court held that where a defendant had invoked his right to an attorney and police subsequently initiated questioning, the defendant's statement must be suppressed. In the instant case, defendant initiated the conversation with Bakios, and stated that he wanted to talk without an attorney.

We conclude that the government met its burden of proving that the defendant's incriminating statements were the product of a knowing, intelligent, and voluntary waiver of his Fifth Amendment rights. The trial court's determination that the defendant voluntarily waived his rights was not clearly erroneous.

## III. Sufficiency of Evidence for Conspiracy Conviction

Defendant asserts that the evidence was insufficient for the jury to conclude that he was guilty of conspiracy. The thrust of his argument is that the government's evidence only established a buyer-seller relationship between defendant and Nowell.

As amended by the Anti–Drug Abuse Act of 1988, Pub.L. 100–690, § 6470(a), 102 Stat. 4377, the drug conspiracy statute currently provides: "Any person who attempts or conspires to commit any

offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. To establish the offense of conspiracy under 21 U.S.C. § 846, the government was required to prove that the defendant knew at least the essential objectives of the conspiracy and knowingly and voluntarily became a part of it. *United States v. Richard*, 969 F.2d 849, 856 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992). An agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose. *Jordan v. United States*, 370 F.2d 126 (10th Cir.), *cert. denied*, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 595 (1967). " '[T]he jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy.' " *United States v. Brown*, 995 F.2d 1493, 1502 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). Under the drug conspiracy statute, the government need not prove the commission of any overt acts in furtherance of the conspiracy. *United States v. Shabani*, —— U.S. ——, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, "we examine the evidence in the light most favorable to the government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *see also United States v. Anderson*, 981 F.2d 1560 (10th Cir.1992). Further, while the evidence supporting the conviction must be "substantial" and "do more than raise a mere suspicion of guilt," *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987) (quoting *United States v. Ortiz*, 445 F.2d 1100, 1103 (10th Cir.), *cert. denied*, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971)), it "need not conclusively exclude every other reasonable hypothesis

and it need not negate all possibilities except guilt." *United States v. Alonso*, 790 F.2d 1489, 1493 (10th Cir.1986) (quoting *United States v. Henry*, 468 F.2d 892, 894 (10th Cir.1972)).

Ronny Nowell, named in the indictment as a co-defendant, entered into a plea agreement and testified against the defendant. According to Nowell, the defendant asked for Nowell's assistance in selling three "eight-balls," or one-eighth-ounce quantities of methamphetamine, in Oklahoma City. Defendant believed the drugs could be sold more easily in Oklahoma City, as it was a more populous city than Stringtown. Nowell made phone calls from defendant's residence to several people he considered to be prospective buyers of methamphetamine. Nowell left defendant's residence with three one-eighth-ounce quantities of methamphetamine to try to sell for the defendant. After Nowell sold the three one-eighth-ounce quantities, he called the defendant to tell him he had completed the sales. Nowell then drove to defendant's residence and delivered the money to the defendant.

Through an acquaintance, Nowell met Officer Whitebird, to whom he sold methamphetamine given to him by defendant. On at least two occasions, the defendant travelled to Nowell's residence with methamphetamine in order to complete sales to Whitebird. On these occasions, Nowell and the defendant would "cut", or dilute, the methamphetamine with an adulterant, weigh it, and package it for resale to Whitebird. On other occasions, Nowell would travel to defendant's residence in Stringtown to pick up the drugs. Nowell told Whitebird that his "connection" was named "Dean," and that he lived on the McIntyre Ranch. On several occasions, the defendant "fronted" the drugs to Nowell, or gave Nowell the drugs on credit. According to Nowell, defendant was aware that he was reselling the drugs he acquired from defendant to an individual named "Steve." "Steve" was the undercover name for Whitebird.

Nowell testified that whenever he was about to make a sale, he would attempt to contact the defendant to apprise him of what

was going on, and that he attempted to contact the defendant with respect to each of the drug transactions Nowell entered into with Whitebird.

Officer Whitebird testified that Nowell consistently referred to his connection, or source of supply, as "Dean." Nowell also told Whitebird that "Dean" worked as a ranch hand on the McIntyre Ranch in Stringtown, Oklahoma. On one occasion, Whitebird asked Nowell whether Nowell could get him two ounces of methamphetamine, and Nowell responded that he would have to call his connection to see if he could get it. Whitebird received a phone call from Nowell later that week wherein Nowell informed Whitebird that his connection did have two ounces for Whitebird. Whitebird asked Nowell if Nowell could "cut him a deal" on the price per ounce if Whitebird purchased two ounces. Nowell responded that he would have to check with his connection, as he wasn't sure whether "Dean" would lower his prices.

In his statement to Agent Bakios, the defendant admitted that he sold methamphetamine to Ronny Nowell. Defendant further admitted to Bakios that on past occasions he had driven to Oklahoma City to deliver methamphetamine to Nowell, and Nowell had also driven to Stringtown to pick up methamphetamine from him.

■ Viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences therefrom, we conclude that the evidence was sufficient for the jury to find defendant guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846.

## IV. Enhancement of Defendant's Sentence

Finally, defendant contends that the district court erred in awarding a two-level enhancement of defendant's sentence under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1) for possession of a firearm.

■ An appellate court reviews a district court's legal interpretation of the Sentencing Guidelines *de novo,* and uses the clearly erroneous standard to review a trial court's factu-

al determinations at sentencing. *United States v. Roberts,* 980 F.2d 645, 647 (10th Cir.1992) (citing *United States v. Agbai,* 930 F.2d 1447, 1448 (10th Cir.1991), and *United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991)).

U.S.S.G. § 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Defendant relies on Application Note No. 3 to section 2D1.1 of the Sentencing Guidelines in arguing the enhancement is inapplicable. He cites the following portion of Application Note No. 3:

> For example, the enhancement would not apply if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

The Application Note provides more guidance than defendant suggests. The Note also states: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." In *United States v. Roberts,* 980 F.2d 645 (10th Cir.1992), this court addressed the meaning of U.S.S.G. 2D1.(b)(1):

> "We agree that the plain language of section 2D1.1(b)(1) and its commentary permit a trial judge to enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense. The government bears the burden of proving possession by a preponderance of the evidence. *United States v. Saucedo,* 950 F.2d 1508, 1518 (10th Cir.1991). Once the government has met that burden, the commentary creates an exception to the blanket rule that mere proximity is sufficient. It states that the enhancement is inappropriate if the evidence suggests that it is "clearly improbable" that the gun was connected to the offense. The commentary does not ask the government to show that the gun is connected to the offense; instead, the defendant must show that the exception applies to him."

980 F.2d at 647.

■ At the sentencing hearing in the instant case, the defendant presented no evi-

dence to suggest the clear improbability of a connection between the dangerous weapon and the offense. Instead, defendant asserted that there was no evidence that drug trafficking took place in the bedroom. The government's evidence revealed that agents seized the loaded .30 caliber rifle, found next to defendant's bed. Near the bed was a dresser where an ounce of methamphetamine was found. From the close proximity of the drugs to the rifle, there is a strong inference that there was a connection between the two. We cannot say that the trial judge clearly erred in his determinations that the firearm was connected to the defendant's drug activities, and that the defendant had not met his burden of showing that the exception to enhancement applied.

The judgment of conviction and sentence is AFFIRMED.