**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BRYANT L. MARSHALL,

      Defendant - Appellant.

No. 97-2172

(D.C. No. CR-96-220-JC)

(D. New Mex.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **McKAY**, and **EBEL**, Circuit Judges.

      Defendant Bryant Marshall was convicted of conspiracy to possess with intent to distribute methamphetamine and aiding and abetting and possession with intent to distribute methamphetamine.  In this appeal, he claims that the evidence was insufficient to support either of his convictions.

      On June 18, 1996, Defendant, along with ten co-defendants, was indicted in a superseding indictment on two counts arising from drug trafficking activities in California and New Mexico.  Count I charged conspiracy to possess with intent to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribute one kilogram and more of a substance containing methamphetamine and aiding and abetting in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and it named as defendants Mr. Marshall and Joe Altamirano, Kenneth Brown, Michael Clark, Alfred Ellick, Ulysses Harper, Christopher Lee, Burch Woody McCoy, Mary Sanchez, Ricardo Vera, and Melanie Young. Count II charged Defendant and Mr. Ellick, Mr. Lee, and Ms. Young with possession with intent to distribute 100 grams and more of a substance containing methamphetamine on April 4, 1996, and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B) and 18 U.S.C. § 2. Defendant was tried with Mr. Altamirano, Mr. Ellick, Mr. Harper, and Mr. McCoy.[1] On January 31, 1997, a jury convicted Defendant on both counts. Defendant was sentenced to 240 months' imprisonment for Count I and 151 months' imprisonment for Count II, to run concurrently, and terms of supervised release.

Defendant's convictions stem from his participation in a methamphetamine distribution ring in Roswell, New Mexico, in 1995 and 1996.[2] According to

---

[1]The record indicates that Mr. Brown, Mr. Clark, and Ms. Young testified at trial pursuant to plea agreements and that, at the time of trial, Mr. Lee and Ms. Sanchez were fugitives. Mr. Vera pled guilty to Counts I and III of the Superseding Indictment but did not testify at trial.

[2]A detailed explanation of the underlying facts is set out in a companion case, United States v. Harper, No. 97-2153, 1998 WL 794972 (10th Cir. Nov. 16, 1998). For the purposes of this case, we recite only the facts in the conspiracy directly relating to Defendant.

testimony at trial, the Drug Enforcement Agency began receiving information in late 1994 or early 1995 about a possible methamphetamine distribution ring in Roswell, New Mexico. Defendant testified that in June 1995, he drove Mr. Lee and Mr. Harper to the train station in Albuquerque, New Mexico. On June 14, 1995, codefendants Mr. Lee and Mr. Harper were arrested for possession of five pounds of methamphetamine before they boarded an Amtrak train headed back to New Mexico. In April 1996, Federal Express employees seized a package containing one pound, or 454 grams, of methamphetamine which was addressed to co-defendant Ms. Melanie Young in Alamogordo, New Mexico. On April 4, 1996, DEA agents executed a controlled delivery of the package to Ms. Young's residence. After completing the delivery, the agents executed a search warrant on the property and arrested Defendant and Ms. Young. In addition to recovering the one-pound package of methamphetamine, agents also seized a pistol belonging to Defendant, a book containing phone numbers for Mr. Lee and Defendant, a piece of paper with Mr. Vera's phone number, and photographs of Mr. Harper and Mr. Lee. Following the controlled delivery, DEA agents interviewed Mr. Lee and secured his cooperation to ferret out the other members of the conspiracy including Mr. Altamirano, Mr. Ellick, Mr. Harper, Mr. Vera, Mr. Brown, and Ms. Sanchez.

Defendant contends that the evidence was insufficient to show that he

possessed methamphetamine with intent to distribute and that he was a member of the conspiracy charged in the indictment. We review the sufficiency of the evidence de novo, viewing both direct and circumstantial evidence and the inferences therefrom in a light most favorable to the government to determine if a reasonable jury could find beyond a reasonable doubt that the defendant was guilty. See United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, __ U.S. __ , 117 S. Ct. 226 (1996). In conducting our review, "'we may neither weigh conflicting evidence nor consider the credibility of witnesses.'" United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997) (citation omitted).

To obtain a conviction for possession of narcotics with intent to distribute, the government must establish beyond a reasonable doubt that the defendant knowingly possessed the illegal drug with the specific intent to distribute it. See United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997), cert. denied, __ U.S. __ , 118 S. Ct. 1856 (1998). Possession may be actual or constructive. See id. at 1441. To establish constructive possession, the government must present evidence, either direct or circumstantial, that the defendant "knowingly holds the power and ability to exercise dominion and control over the property." Id. In short, the government must establish a sufficient nexus between the defendant and the drug, but constructive possession may be joint among several individuals. See id.

Defendant asserts that his presence at Ms. Young's house during the controlled delivery is insufficient to establish constructive possession and that the evidence does not support actual possession. However, after reviewing the record, we conclude that the evidence sufficiently demonstrates Defendant's actual or constructive possession. As noted above, possession with intent to distribute methamphetamine was the contemplated crime of the conspiracy. Therefore, Defendant "'is deemed to possess the [methamphetamine] through his co-conspirators' possession.'" Carter, 130 F.3d at 1441 (quoting United States v. Medina, 887 F.2d 528, 532 (5th Cir. 1989)). Because at least one of Defendant's co-conspirators, Mr. Lee, undoubtedly had actual possession of the one-pound methamphetamine package with intent to distribute it, Defendant is deemed to have had actual possession of it.

Further, circumstantial evidence indicates that Defendant constructively possessed the methamphetamine. He was present for the controlled delivery and, according to Ms. Young's testimony, was going to receive the package once it arrived. Ms. Young testified that Defendant stated that the package was "their package," referring to himself and Mr. Lee. R., Trial Tr. IV at 336. Ms. Young also testified that Defendant was to sign for the package if she was not home when it was delivered. Additionally, a narcotics police officer testified that Defendant attempted to flee the trailer when law enforcement personnel arrived.

In light of this testimony and evidence that Defendant possessed a firearm at the time of the controlled delivery, the jury could reasonably infer Defendant's nexus to the package of methamphetamine. Viewed collectively and in the light most favorable to the government, the evidence is sufficient to support an inference that Defendant at least had joint constructive possession of the methamphetamine delivered to Ms. Young's trailer. We therefore affirm the jury's verdict on the possession count.

Turning now to the conspiracy charge, Defendant does not dispute that the government established the existence of a conspiracy to distribute large amounts of methamphetamine; he merely claims that the government has failed to prove that he joined the conspiracy. In order to prove that a defendant is guilty of conspiracy under 21 U.S.C. § 846, the government bears the burden of showing the following elements: (1) the defendant agreed with at least one other person to violate the law; (2) he knew the essential objectives of the conspiracy; (3) he knowingly and voluntarily became involved; and (4) the alleged co-conspirators were interdependent. See Carter, 130 F.3d at 1439; United States v. Edwards, 69 F.3d 419, 430 (10th Cir. 1995), cert. denied sub nom. Chaplin v. United States, 517 U.S. 1243 (1996).

We repeatedly have confirmed that a jury may infer an agreement to conspire "'from the acts of the parties and other circumstantial evidence

indicating concert of action for the accomplishment of a common purpose.'" Carter, 130 F.3d at 1439 (quoting United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994), cert. denied, 514 U.S. 1055 (1995)); see also United States v. Bell, 154 F.3d 1205, 1208 (10th Cir. 1998); United States v. Johnston, 146 F.3d 785, 789 (10th Cir. 1998). Thus, the government need not provide direct evidence of an agreement. See Bell, 154 F.3d at 1208. However, to demonstrate that the defendant entered into an agreement, the government must show more than mere association with the alleged co-conspirators. See United States v. Evans, 970 F.2d 663, 669 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993).

In this case, Defendant's agreement to participate in the conspiracy may be inferred from his actions and from trial testimony. Defendant testified that he agreed to drive his good friend, Mr. Harper, and Mr. Lee to the Amtrak station for their trip to California. Mr. Harper and Mr. Lee subsequently were arrested in California for possession of five pounds of methamphetamine. Mr. Clark testified that he knew Defendant, Mr. Ellick, Mr. Lee, and Mr. Harper through Mr. Vera and that he knew Mr. Vera sold them drugs and referred to them as "big money." R., Trial Tr. IV at 408-09. Mr. Baxter Jones, testifying pursuant to a separate indictment and plea agreement, stated that Defendant and Mr. Lee were "drug partners," id. at 252, that Defendant transported drugs for Mr. Lee and was his "flunky," id. at 257, and that Defendant "was just always there, always around"

when Mr. Jones dealt with Mr. Harper. Id. at 256-57. Ms. Young testified that she delivered two ounces of methamphetamine from Mr. Lee to Defendant and that Defendant supplied her with methamphetamine. Mr. Jones partially corroborated this testimony when he stated that Ms. Young told him that she had two ounces of methamphetamine to deliver to Defendant from Mr. Lee but that Defendant never picked it up. As noted above, Ms. Young also testified that Defendant was supposed to receive the package that was delivered to her trailer on April 4, 1996. In response to Defendant's arguments that much of the above testimony is incredible, uncorroborated accomplice testimony, we remind Defendant that accomplice testimony is admissible even if it is uncorroborated. See United States v. Sloan, 65 F.3d 861, 863 (10th Cir. 1995), cert. denied, 516 U.S. 1097 (1996); United States v. McGuire, 27 F.3d 457, 462 (10th Cir. 1994). Further, although we address tangentially the question of the credibility of accomplice testimony here, we will not otherwise consider on appeal arguments pertaining to the credibility of witnesses. See Pappert, 112 F.3d at 1077. Taking all inferences in the light most favorable to the government, the circumstantial evidence is sufficient to support the jury's finding beyond a reasonable doubt that Defendant agreed to the conspiracy's objective of possessing methamphetamine with intent to distribute.

To show knowing and voluntary involvement in the conspiracy, the

government must demonstrate that the defendant had a general awareness of both the scope and the objective of the conspiracy. See Evans, 970 F.2d at 669-70. In conspiracy cases, a "'defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances.'" Carter, 130 F.3d at 1440 (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir. 1986)). This means that "'the jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy.'" Johnston, 146 F.3d at 789 (quoting Johnson, 42 F.3d at 1319). "The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt." Id.

As noted above, Defendant does not challenge the existence of a conspiracy to distribute methamphetamine. Rather, his position is that he did not knowingly and voluntarily enter the conspiracy charged in the indictment and that the evidence shows, at most, a buyer-seller relationship. He argues that none of the witnesses testified that they saw him handling methamphetamine on the scale alleged in the indictment and that there is no evidence creating an affirmative link between him and the distribution of methamphetamine. The record supports the jury's finding to the contrary.

Defendant's knowing and voluntary involvement in the conspiracy can be

inferred from his participation in his co-defendants' June 1995 trip to California. He testified that he willingly drove Mr. Harper and Mr. Lee to the Amtrak station in June 1995. The jurors could reasonably infer from the nature of the trip that its sole purpose was to obtain or distribute methamphetamine and that Defendant's participation by driving Mr. Lee and Mr. Harper to the station evidenced more than mere proximity to illegal activity. Additionally, jurors could infer Defendant's knowing participation in the conspiracy from his presence at Ms. Young's residence when the controlled delivery was made and his subsequent attempt to flee the residence upon the arrival of law enforcement personnel. Mr. Clark's testimony that he knew Mr. Vera sold drugs to Defendant, Mr. Ellick, Mr. Lee, and Mr. Harper and referred to them as "big money," R., Trial Tr. IV at 408-09, also supports an inference of knowing participation. Trial testimony also indicates that two wire transfers to Mr. Vera were made in Defendant's name, that Defendant rented a hotel room in California in the vicinity of the drug purchases, and that a phone call was made from that room to Mr. Ellick in New Mexico. Viewing all of this evidence, and the testimony of Mr. Jones and Ms. Young to which we previously referred, in the light most favorable to the government, we hold that the jury's conclusions that Defendant knew that the central objective of the conspiracy was the distribution of methamphetamine and that he was a voluntary and knowing participant were reasonable.

Finally, the government must produce sufficient evidence of "'the essential element of interdependence' among the co-conspirators." United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.) (quoting United States v. Dickey, 736 F.2d 571, 582 (10th Cir. 1984), cert. denied sub nom. Beasley v. United States, 469 U.S. 1188 (1985)), cert. denied, 498 U.S. 874 (1990). Interdependence exists where "each co-conspirator['s] activities 'constituted essential and integral steps toward the realization of a common, illicit goal.'" Edwards, 69 F.3d at 431 (quoting Fox, 902 F.2d at 1514 (citation omitted)). "[T]he government need not show that the "[c]oconspirators . . . know the identities or details of each scheme or have connections with all other members of the conspiracy.'" Id. (quoting United States v. Roberts, 14 F.3d 502, 511 (10th Cir. 1993)).

Much of the record evidence described above supports a finding of interdependence. For example, jurors could reasonably infer interdependence from Defendant's participation in the June 1995 trip to California, from the wire transfers in Defendant's name to Mr. Vera in California, from Mr. Jones' testimony concerning Defendant's role and relationship with Mr. Lee and Mr. Harper, from Mr. Clark's testimony describing Mr. Vera's relationship with Defendant and other co-defendants, and from the papers found at Ms. Young's residence on which Mr. Vera's, Mr. Lee's and Defendant's phone numbers were written. We conclude that the evidence is sufficient to support an inference that

the co-conspirators were interdependent.

Accordingly, we hold that the jury could reasonably infer from this evidence that Defendant willfully joined the conspiracy and took actions to aid the possession and distribution of the methamphetamine. Admittedly, the evidence against Defendant is not as strong as that against some of his co-defendants, but it is nevertheless sufficient to establish his participation in the conspiracy beyond a reasonable doubt.

In conclusion, we affirm Defendant's convictions on both counts.

AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge