UNITED STATES of America, Plaintiff–Appellee,

v.

Jose DeLUNA, Defendant–Appellant.

No. 92–1366.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1993.

Normando R. Pacheco, Denver, CO, for defendant-appellant.

John Milton Hutchins (James R. Allison, Interim U.S. Atty., and Charlotte J. Mapes, Asst. U.S. Atty., Dist. of Colorado, Denver, CO, with him on the brief), Asst. U.S. Atty., Dist. of Colorado, Denver, CO, for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and COOK *, District Judge.

TACHA, Circuit Judge.

Jose DeLuna appeals from a jury verdict convicting him of one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of unlawful possession with intent to distribute and aiding, abetting and causing the possession with intent to distribute five kilograms or more of cocaine within one thousand feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and 18

---

* The Honorable H. Dale Cook, Senior District Judge, United States District Court for the North- ern District of Oklahoma, sitting by designation.

U.S.C. § 2. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

On December 19, 1991, a government confidential informant (the "CI") introduced Special Agent Ralph Villaruel to Tito Solis. Agent Villaruel, posing as an out-of-state cocaine buyer, told Solis that he was interested in purchasing two to five kilograms of cocaine. Solis then contacted the defendant, Jose DeLuna, and told him that a buyer was interested in purchasing five kilograms of cocaine. DeLuna agreed to locate a supplier and on January 9, 1992, DeLuna contacted Adrian Teran–Guillan and asked him to obtain the cocaine through his friends.

The following morning, January 10, 1992, Teran–Guillan, DeLuna and Solis met at the El Acapulco restaurant at approximately 8:30 a.m. to discuss the terms of the deal. DeLuna and Teran–Guillan agreed that DeLuna would get a "cut" of the money for setting up the deal and that the exchange would take place that afternoon; Solis would be responsible for bringing the buyer and the money and Teran–Guillan would be responsible for obtaining the cocaine from one of his sources—Adan Herrera–Astorga. DeLuna and Solis left the El Acapulco around 9:00 a.m.

Shortly after leaving the El Acapulco, Solis met with Agent Villaruel and the CI to relate the terms of the drug transaction. At approximately 1:15 p.m., Solis met Agent Villaruel and the CI at a Denny's Restaurant to conclude the deal, but Solis informed Villaruel and the CI that the exchange would have to take place at a different restaurant. The CI then traveled with Solis to the El Acapulco where they were met by Teran–Guillan. Teran–Guillan then left to place a telephone call, and approximately forty-five minutes later, David Ortiz arrived and showed Solis and the CI a shoe box containing five kilograms of cocaine. Upon receiving a signal from the CI, several Drug Enforcement Administration (DEA) agents arrested Solis, Ortiz and Teran–Guillan.

After Solis was arrested, he cooperated with the DEA agents by informing them of DeLuna's involvement in the drug transaction. On January 31, Agent Villaruel contacted DeLuna. DeLuna acknowledged that he knew both Solis and Teran–Guillan, but he denied knowing anything about the drug transaction that took place on January 10, 1992. Three days later, however, DeLuna called Agent Villaruel and arranged to meet him and two other DEA agents at a local Burger King restaurant. At this meeting, DeLuna admitted that he went to the El Acapulco the morning of January 10, 1992, but claimed that his role was limited to merely introducing Solis to Teran–Guillan.

After a jury trial, DeLuna was convicted of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and unlawful possession with intent to distribute and aiding, abetting and causing the possession with intent to distribute five kilograms or more of cocaine within one thousand feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and 18 U.S.C. § 2 (Count II). DeLuna appeals his conviction on several grounds. We address DeLuna's arguments in turn.

## II. Discussion

### A. Admission of Evidence Regarding December 1991 Drug Transaction

DeLuna makes several related arguments dealing with the district court's admission of a December 1991 drug transaction involving DeLuna, Teran–Guillan and Herrera–Astorga. We review a district court's admission of evidence for an abuse of discretion. *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1876, 123 L.Ed.2d 494 (1993).

In meeting at the Burger King restaurant with Agent Villaruel and the other DEA agents, DeLuna stated that sometime during December 1991 he had received a package from Teran–Guillan containing approximately $8,000 worth of cocaine. Teran–Guillan testified at trial that he obtained this package from Herrera–Astorga, and that he gave the package to DeLuna because DeLuna had a customer for one kilo of cocaine. Although DeLuna claimed that he gave the package back to Teran–Guillan, Teran–Guillan testi-

fied that DeLuna never returned the package and never paid for the cocaine. According to Teran–Guillan, when DeLuna contacted him on January 9, 1992, DeLuna promised to take care of the $8,000 debt from the December 1991 transaction along with the January 10, 1992 deal.

### 1. 404(b) Limiting Instruction

DeLuna first argues that the district court erred in admitting into evidence the facts surrounding the December 1991 drug transaction without giving a Rule 404(b) limiting instruction. Count I of the indictment charged DeLuna with conspiracy to distribute and to possess with intent to distribute cocaine from December 1, 1991, to January 10, 1992. In order to prove this conspiracy, the government sought to introduce into evidence the December 1991 drug transaction involving DeLuna, Teran–Guillan and Herrera–Astorga. Although the government believed that the December 1991 drug transaction was direct evidence of the conspiracy charged in Count I, out of an "abundance of caution," the government also offered the December 1991 transaction pursuant to Federal Rule of Evidence 404(b) as evidence of DeLuna's motive, intent and knowledge to become involved in the drug transaction that occurred on January 10, 1992. Prior to trial, however, the district court determined, and the government agreed, that the December 1991 transaction was not 404(b) evidence with respect to Count I of the indictment. Rather, the court concluded that the evidence was "inextricably intertwined" with the conspiracy charged in Count I and was therefore admissible as direct evidence as to that count.

■ In *United States v. Record,* 873 F.2d 1363 (10th Cir.1989), we stated:

Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was "inextricably intertwined" with the charged crime such that a witness' testimony "would have been confusing and incomplete without mention of the prior act."

*Id.* at 1372 n. 5 (citations omitted) (quoting *United States v. Richardson,* 764 F.2d 1514, 1521–22 (11th Cir.), *cert. denied,* 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985)). Here, Count I of the indictment charged DeLuna with conspiracy to distribute and to possess with intent to distribute cocaine *from December 1, 1991, to January 10, 1992.* Thus, as the district court noted, the December 1991 transaction is inextricably intertwined with, or part of, the conspiracy scheme for which DeLuna was being prosecuted, *see United States v. Orr,* 864 F.2d 1505, 1510 (10th Cir.1988), and it therefore is direct evidence and not Rule 404(b) evidence.

DeLuna argues nevertheless that the district court erred by not instructing the jury that the evidence of the December 1991 drug transaction was to be considered only for purposes of Count I. This argument is entirely without merit. Prior to Teran–Guillan's testimony of the events surrounding the December 1991 transaction, the court clearly instructed the jury that the evidence that followed was to be considered only as to Count I.[1] Because the December 1991 transaction was properly admitted as direct evidence of the Count I conspiracy and because the district court instructed the jury that the transaction was only to be considered for purposes of Count I, we conclude that the district court did not abuse its discretion in admitting this evidence without giving a Rule 404(b) limiting instruction.

---

1. The court stated:

   Members of the jury, at times evidence may be admitted for one purpose or for a limited purpose only, not for any other purpose in the case, and this is such an occasion.

   The testimony that you are about to hear concerning the delivery of a package to Mr. DeLuna in December of 1991 may be considered by you as to Count I of the Indictment charging conspiracy in this case, but not as to

   Count II of the Indictment, which charges a separate offense. Therefore, you are instructed that you may consider it only as to Count I, but not as to Count II of the Indictment in this case.

   Insofar as the witness, Ralph Villaruel, may have testified as to this transaction in any way, that testimony is likewise limited to Count I of the Indictment.

### 2. Lack of Conspiracy Finding

■ Relying on *United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), DeLuna next contends that the district court was required to make a finding that Herrera–Astorga was a member of the conspiracy before admitting into evidence Teran–Guillan's testimony that Herrera–Astorga was his drug source for the December 1991 transaction. DeLuna's reliance on *James* is misplaced. In *James*, the Fifth Circuit held that before admitting one coconspirator's out-of-court statement against another coconspirator, the district court must find that both parties were members of the same conspiracy and that the statement was made in the course of, and in furtherance of, the conspiracy. *Id.* at 583; *see also United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir.1993) ("Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule.") (citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987)). Here, because no out-of-court coconspirator statement by Herrera–Astorga was admitted into evidence,[2] Rule 801(d)(2)(E) was not implicated. Rather, the conspiracy itself was at issue and Teran–Guillan merely made an in-court statement identifying Herrera–Astorga as his drug source for the December 1991 transaction. The district court was not required to make an initial finding that Herrera–Astorga was a member of the conspiracy and therefore did not abuse its discretion in admitting this evidence.

### B. The Denial of DeLuna's Motion for Judgment of Acquittal

At the conclusion of the government's case, DeLuna moved for a judgment of acquittal on Count II. On appeal, DeLuna argues that the district court erred in denying his motion for judgment of acquittal. "We review a district court's denial of a motion for judgment of acquittal viewing all the evidence and drawing all reasonable inferences in the light most favorable to the prosecution." *United States v. Young*, 954 F.2d 614, 616 (10th Cir.1992). "Defendant's motion will be denied if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Frank*, 901 F.2d 846, 848 (10th Cir.1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Count II of the indictment charged DeLuna with unlawful possession with intent to distribute and aiding, abetting and causing the possession with intent to distribute five kilograms or more of cocaine within one thousand feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860(a), and 18 U.S.C. § 2. It is undisputed that the El Acapulco restaurant, at which Solis, Teran–Guillan and Ortiz were arrested for possession with intent to distribute cocaine, was within one thousand feet of a school. Deluna, however, contends that the district court erred in denying his motion for judgment of acquittal because the evidence presented at trial was insufficient to prove that he aided, abetted or otherwise did any overt act within one thousand feet of the school in furtherance of the transaction. DeLuna's argument misses the mark.

■ An individual can be convicted of aiding and abetting the possession with intent to distribute cocaine within one thousand feet of a school even though the individual does not aid, abet or otherwise do any overt act within one thousand feet of a school. "To be guilty of aiding and abetting a crime, the defendant must willfully associate himself with the criminal venture and seek to make it succeed through *some* action

---

2. Teran–Guillan did begin to testify at trial about an out-of-court statement made by Herrera–Astorga concerning the conspiracy. Had the district court admitted this statement into evidence, the court would have been required to make a finding that Herrera–Astorga was a member of the conspiracy and that the statement was made during the course and in furtherance of the conspiracy. *See Perez*, 989 F.2d at 1577. The government, however, withdrew Teran–Guillan's reference to the statement made by Herrera–Astorga, and upon defense counsel's motion, the district court struck Teran–Guillan's answer as nonresponsive and instructed the jury to disregard any testimony about the out-of-court statement made by Herrera–Astorga.

on his part." *United States v. Esparsen,* 930 F.2d 1461, 1470 (10th Cir.1991) (emphasis added), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). Under this definition, ample evidence exists here that DeLuna aided and abetted the crime of possession with intent to distribute cocaine within one thousand feet of a school. After Solis told DeLuna that a buyer was interested in purchasing five kilograms of cocaine, DeLuna contacted Teran–Guillan and asked him if he could obtain the cocaine from his friends. DeLuna then introduced Solis to Teran–Guillan. Moreover, on the morning of January 10, 1992, DeLuna discussed the terms of the transaction with Teran–Guillan at the El Acapulco and the parties agreed that DeLuna would receive a "cut" of the money for setting up the deal. The transaction then took place that afternoon at the El Acapulco restaurant, which was located within one thousand feet of a school. The government need not show that DeLuna was at any time present within one thousand feet of the school or that he instructed the other parties where to conduct the transaction. *See United States v. Falu,* 776 F.2d 46, 49 (2d Cir. 1985) (stating in dicta that an aider and abetter located outside the one thousand foot zone may be subject to the enhanced penalties of the schoolyard statute as long as the drug distribution itself occurs within one thousand feet of a school). Additionally, because 21 U.S.C. § 860(a) has no knowledge requirement, *United States v. Dimas,* 3 F.3d 1015, 1022 (7th Cir.1993) (noting that every circuit to consider the issue has held that § 860(a) has no knowledge requirement), the fact that DeLuna's coconspirators may have been unaware of the school's location is irrelevant.

We conclude that a jury could have found beyond a reasonable doubt that DeLuna willfully aided and abetted the crime of possession with intent to distribute cocaine within one thousand feet of a school. Accordingly, the district court did not err in denying DeLuna's motion for judgment of acquittal on Count II.

### C. *Brady* Violation

Prior to trial, DeLuna requested that the government disclose all deals, inducements, or promises of leniency made to government informants or witnesses. The government disclosed the identity of the CI and informed DeLuna that the CI had no criminal history and that he was paid living expenses for his assistance. Although the government promised to disclose prior to trial the exact amount paid to the CI, the government failed to fulfill this promise. The government also gave DeLuna a copy of a plea agreement between the government and Teran–Guillan, which stated that the government would dismiss "the Indictment in 92–CR–52" in exchange for Teran–Guillan's testimony against DeLuna. DeLuna, however, did not receive a copy of "the Indictment in 92–CR–52." DeLuna contends that the government's failure to disclose the exact amount paid to the CI and its failure to provide a copy of "the Indictment in 92–CR–52" violated his constitutional rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87, 83 S.Ct. at 1196–97.

We review de novo DeLuna's claim that the government failed to disclose evidence in violation of *Brady. United States v. Johnson,* 977 F.2d 1360, 1380 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993). "[T]o establish a *Brady* violation, the defense must prove that: (1) the prosecution suppressed the evidence; (2) the evidence would have been favorable to the accused; and (3) the suppressed evidence is material." *United States v. Wolf,* 839 F.2d 1387, 1391 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). We hold that the facts of this case do not constitute a *Brady* violation.

First, the government's failure to disclose the exact amount paid to the CI did not result in a *Brady* violation because this evidence would not have been favorable to DeLuna. Had the government disclosed the exact amount paid to the CI, DeLuna would not have been able to use this evidence to his advantage—it is not exculpatory and it has

no impeachment value because the CI never had any contact with DeLuna and he was not a witness at DeLuna's trial.

Second, the government's failure to provide DeLuna with a copy of "the Indictment in 92–CR–52" did not result in a *Brady* violation because this evidence was not material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Here, had the government provided DeLuna with a copy of "the indictment in 92–CR–52," DeLuna would not have been able more effectively to impeach Teran–Guillan regarding his bias or interest in testifying for the government. The record suggests that defense counsel knew the substance of "the Indictment in 92–CR–52." He repeatedly attempted to impeach Teran–Guillan by referring to the facts underlying this indictment. Further, Teran–Guillan himself admitted on direct examination that he had received a reduced sentence in exchange for his testimony. Moreover, the record is replete with other impeachment evidence against Teran–Guillan. Teran–Guillan was not only impeached through the testimony of the DEA agents but also through the testimony of Solis on cross-examination. Thus, there is no "reasonable probability that, had [this] evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** DeLuna's conviction on Counts I and II.