**UNITED STATES of America,
Plaintiff,**

v.

**Terence W. COOPER, Frank D. Heck,
and Paige A. Heck, Defendants.**

Nos. 02–40069–01–SAC, 02–40069–02–SAC, 02–40069–03–SAC.

United States District Court,
D. Kansas.

Sept. 25, 2003.

Melody J. Evans, Office of Federal Public Defender, Topeka, KS, for Defendant Terence W. Cooper.

Stephen W. Kessler, Topeka, KS, for Defendant Frank D. Heck.

Mark L. Bennett, Jr., Bennett & Hendrix, LLP, Topeka, KS, for Defendant Paige A. Heck.

Tanya J. Treadway, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the following motions in limine: Government's Motion to Exclude Exculpatory Tape Recorded Statements of Defendant Frank Heck (Dk.166); Government's Motion to Exclude Evidence Relating to Defendants' Religious Beliefs or Opinions (Dk.167); Defendants' Request and Response to Government's 404(b) Notice (Dks. 168 and 177); Defendants' Motion to Preclude Evidence of Defendants' Personal Expenditures (Dk.169); Defendants' Motion to Preclude Evidence of Defendants' Prior Business Activities in Certain Corporations (Dk.170); Defendants' Motion to Exclude Evidence of Failure to File Income Tax Returns or Forfeiture of Articles of Incorporation (Dk.174); Defendants' Motion to Preclude Government from Offering Expert Testimony That Certain Conduct is Fraud (Dk.175); Defendants' Motion to Preclude Government from Offering Evidence That Customers Suffered Medical Consequences From Equipment (Dk.176); Defendants' Motion and Response to Government's Notice of Expert Witnesses (Dk.178); Defendants' Motion to Preclude Government From Offering Testimony About Extraneous Events Involving Ms. Soerries and the Prosecutor (Dk.187); Defendant Terence Cooper's Motion to Dismiss Goverment's Motion in Limine on Religious Beliefs and for Discovery of Government's Source of Information (Dk.188); and Defendants' Motion to Preclude Further Governmental Interference with Defense Investigation (Dk.189).

### Government's Motion to Exclude Exculpatory Tape Recorded Statements of Defendant Frank Heck (Dk.166)

During the early part of the government's investigation, Special Agent Brian Holt had former Midwest employee Lisa McNish, record a telephone call with Frank Heck that took place on June 10, 1999. During the call, Frank Heck made several exculpatory statements that he and others at Midwest did nothing wrong, illegal or fraudulent. The government seeks to exclude the tape recorded statements as

hearsay and to prohibit the introduction of this tape recording through any witness other than Frank Heck, subject to the restrictions of Fed.R.Evid. 801(d)(1)(B). The defendant Frank Heck summarily argues the tape recorded statement is admissible under the exceptions of present sense impression, Fed.R.Evid. 803(1), and existing mental condition, Fed.R.Evid. 803(3).

The defendant Frank Heck has not shown the applicability of either hearsay exception to his tape recorded statement. The statement is not a description or explanation of an event or condition that was made while the event or condition was being perceived or immediately thereafter. The statement does not describe or explain an event, and it was not contemporaneous with the event.

Because the statement was made nearly six months after the conspiracy allegedly ended or after the alleged commission of the other crimes charged in the first superseding indictment, the statement is not contemporaneous with the mental state sought to be proven. The court grants the government's motion excluding the tape recorded statements on June 10, 1999, subject to Fed.R.Evid. 801(d)(1)(B).

### Government's Motion to Exclude Evidence Relating to Defendants' Religious Beliefs or Opinions (Dk.167)

The government says it has learned that the defendants, especially Frank Heck, "profess to be strongly religious." The government seeks to keep this evidence from being offered to enhance the defendants' credibility. The government relies on F.R.E. 610 which provides:

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced.

The defendant Frank Heck filed no response to this motion. The defendant Terence Cooper responds that the government's motion should be dismissed as moot because it is based on erroneous information about him. The court grants the government's motion to exclude evidence of the defendants' religious beliefs or opinions in order to enhance or impair the defendants' credibility.

### Defendants' Request and Response to Government's 404(b) Notice (Dks. 168 and 177)

In its Rule 404(b) notice, the government contends that all of the listed other acts are intrinsic to the scheme alleged in the indictment and that there will be no 404(b) evidence offered against the defendants. Acknowledging the court could disagree with its characterization of the evidence, the government offers that the 404(b) evidence already has been disclosed to the defendants through discovery. In the notice, the government describes the following other acts it believes are intrinsic but which the defendants may consider extrinsic:

(1) The defendants would deliver a power wheel chair to a Medicare beneficiary, at a cost to Medicare of $5,000. The patient would decide he/she wanted a scooter, which would have cost Medicare approximately $2,300. The defendants would trade the wheelchair for a scooter, but would not reimburse Medicare the difference in cost.

(2) The defendants upcoded a scooter by billing Medicare for a K0014 power wheelchair instead of for a scooter.

(3) The defendants backdated paperwork (sales documents and delivery receipts) to place wheelchairs with nursing home patients. The paperwork would be backdated to indicate that the patient received the wheelchair prior to be being placed in the nursing home.

(4) The defendants continued to bill Medicare for rentals of wheelchairs after the wheelchairs were returned.

(5) The defendants added and billed for wheelchair accessories to increase profits.

(6) The defendants billed for heavy duty footrests, but provided cheaper or standard footrests.

(7) The defendants would submit duplicate claims to Medicare for the same wheelchair and cushion. The defendants would bill a wheelchair for patient #1. When patient #1 died, and the wheelchair was either not delivered or was returned, the defendants would place the wheelchair with patient #2 and bill Medicare again.

(8) Frank Heck wanted employees to accept paychecks without federal and state withholdings.

(9) The defendants caused Midwest to fail to pay all federal and state withholding taxes for employees.

(10) The commission structure for Midwest sales representatives was improper under Medicare rules and regulations.

(11) The defendants sold power wheel chairs to Medicare beneficiaries who had no medical need for power wheelchairs.

(Dk.164, pp. 2–3).

The defendant Frank Heck responds that not all items listed in the government's notice are intrinsic and that the notice fails to provide the relevance of these other acts. In particular, paragraphs 3, 8, 9 and 10 specify actions that are not intrinsic and are not relevant to the charges here. The defendant also asks the court to require the government to disclose additional information needed to make a 404(b) inquiry, *e.g.* name of the beneficiary, the type and model of the chair and/or scooter, the dates of delivery, and the dates of payment.

The defendant Terence Cooper first characterizes the actions described in the notice as extrinsic and then challenges the notice as insufficient in both legal and factual terms. The defendant Cooper as-

serts the notice fails to identify the theory of admissibility which the defendants had asked for in their request and the government had agreed to provide. The defendant Cooper points to the voluminous discovery and numerous transactions involved in the charges and requests the court to order the government to provide specific information about these other acts: names of beneficiaries, dates of transactions, and paperwork evidencing transactions. The defendant Cooper also wants to know the Medicare rules and regulations violated by these transactions. The defendant Cooper argues that paragraphs 8, 9 and 10 are clearly extrinsic and should be excluded.

In reply, the government reiterates and argues that all of the actions are intrinsic, not extrinsic. As for the sufficiency of its notice, the government insists these other actions were already furnished in documents, grand jury testimony and interview reports. With regard to upcoding scooters, the government refers the defendants to documents identified as B32427–30 and 40PAT60038, 60041–109. As to the allegations of improper commission structure, the government recommends the defendants review their own business records, including an opinion letter from their attorney, identified as MISC 78664–66. The government denies that it has any obligation to provide evidence under Rule 404(b). As far as the 404(b) purposes for offering this other act evidence, the government opines it need only provide this when the evidence is being introduced. The government, however, proceeds with disclosing the following purposes for offering the evidence under 404(b): methods, plan, intent, knowledge, pattern and lack of mistake. Because the uncharged acts are close in time and similar in method, the government argues they are highly probative of these grounds.

■ Evidence of uncharged misconduct is properly admitted under Rule 404(b) if: (1) it is offered for a proper purpose under the Rule; (2) it is relevant; (3) the trial court makes a Rule 403 assessment that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court, upon request, instructs the jury that the evidence is to be considered only for the proper purpose for which it was admitted. *See Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Rule 404(b) controls the admissibility of evidence of uncharged misconduct that is extrinsic to the charged crime, but it does not govern the admissibility of evidence of other acts which are intrinsic to the charged offense. *United States v. Johnson,* 42 F.3d 1312, 1316 (10th Cir.1994), *cert. denied,* 514 U.S. 1055, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995).

■ There is not always a bright line separating extrinsic and intrinsic evidence. *United States v. Kimball,* 73 F.3d 269, 272 (10th Cir.1995). "An act is intrinsic to a charged offense if the act is inextricably intertwined with the charged offense, when both acts are part of a single criminal episode, or when the other acts were necessary preliminaries to the crime charged." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.20[2][b] (2nd ed.2003); *see United States v. Johnson,* 42 F.3d at 1316 ("An uncharged act may not be extrinsic if it was 'part of the scheme for which a defendant is being prosecuted' or if it was 'inextricably intertwined with the charged crime[s] such that a witness'[s] testimony would have been confusing and incomplete without mention' of the uncharged act.") (quoting *United States v. Record,* 873 F.2d 1363, 1372 n. 5 (10th Cir.1989)); *United States v. DeLuna,* 10 F.3d 1529, 1532 (10th Cir.1993). An act done in furtherance of an alleged conspiracy "is not an 'other' act

within the meaning of Rule 404(b), rather, it is part of the very act charged." *United States v. Molina,* 75 F.3d 600, 602 (10th Cir.) (citation omitted), *cert. denied,* 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996). If the other acts occurred within the time frame of the charged conspiracy and could be considered part of the scheme for which defendants are being prosecuted, then the evidence is considered intrinsic, particularly when they are an integral and natural part of the witness's account of the circumstances surrounding the charged offense. *United States v. Johnson,* 42 F.3d at 1316.

■ With the exception of ¶¶ 8, 9 and 10, the government's notice appears to describe acts that would qualify as intrinsic evidence, that is assuming they occurred within the same time frame as the charged conspiracy and involved the same persons and entities involved in and impacted by the scheme to defraud. Nonetheless, based on the sheer number of exhibits and transactions, as well as the length of the charged conspiracy, the defendants raise legitimate concerns that the government's notice fails to identify the other acts with enough specificity so as to meet the allegations by motion or at trial. To minimize allegations of surprise and associated delays at trial, the court will direct the government to furnish the defendants within one week of this order a letter that identifies the specific exhibits and supporting documentation that evidences each of the other acts and/or transactions in each of the following ¶¶ 1, 2, 3, 4, 5, 6, 7, and 11, which the government intends to offer at trial.

■ The court agrees with the defendants that the evidence described in ¶¶ 8, 9 and 10 concerning withholding taxes and Midwest's commission structure is extrinsic, as it does not relate to the scheme to defraud and is not a natural and integral

part of the witnesses' accounts of the Midwest's relevant business dealings. Nor must former employees of Midwest testify about such matters in order to give an adequate explanation of their employment relationships with Midwest. The court also finds that this evidence does not carry much probative weight in proving any of the permissible purposes under Rule 404(b). The government's response does not persuasively establish that Midwest's commission structure or its failure to pay state and federal withholding taxes bears on the knowledge or intent alleged in the scheme to defraud. The court believes the admission of this evidence would be unfairly prejudicial to the defendants in that it would suggest a decision on the improper bases of tax violations and illegal sales commissions. Moreover, the court believes the potential for jury confusion is enhanced when tax issues and sales commissions are added to an already overflowing pot of wide-ranging allegations of Medicare fraud and business improprieties and of the arguably complex issues involving Medicare billing and related rules and regulations. The court sustains the defendants' motion as to ¶¶ 8, 9 and 10 and denies the motion as to the other paragraphs with the exception of requiring the government to disclose the supporting documentation for each transaction in each paragraph to be offered at trial.

## DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF DEFENDANTS' PERSONAL EXPENDITURES (Dk.169)

The defendants seek an order preventing the government from introducing evidence as to how the defendants personally spent monies, as alleged in the first superseding indictment, that the defendants used Midwest's business accounts to pay for personal expenses, including visits to strip clubs, gambling and plastic surgery. The defendants argue such expenditures are not relevant in proving whether the money had been obtained illegally. These expenses are not illegal or dishonest in themselves, so they are not relevant in proving motive or intent. The defendants also assert the unfair prejudice from introducing this evidence of lifestyle choices outweighs any potential probative value to this evidence.

The government counters with the general rule that evidence of unexplained wealth or spending is generally admissible to prove crimes that have financial enrichment as their object. The government also argues the defendants' expenditures are relevant to prove their scheme to defraud. "The defendants' spending the proceeds to pay for personal expenses and live the 'high life' tends to show that rather than intending to operate a legitimate business that appropriately billed Medicare and repaid its vendors from the Medicare receivables, they intended to bilk Medicare for as much as they could and leave their vendors unpaid." (Dk.193, p. 2). The government contends the evidence is also relevant in proving intent, namely the receipt and enjoyment of proceeds, should the defendants attempt to blame others for the erroneous coding.

 "As has been stated many times, Rule 403 does not protect a party from all prejudice, only unfair prejudice." *Deters v. Equifax Credit Information Services, Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case. Rather, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir.1991) (quoting Fed.R.Evid. 403 advisory committee's note) (citations omitted). The Sixth Circuit recently discussed some of the issues

involved in determining the admissibility of such evidence:

> Financial gain is the motive for committing almost all financial crimes, drug dealing, robberies, etc. The problem with a general rule of permitting evidence of an affluent lifestyle to show 'motive' for committing a crime is that it ignores the real possibility that the extreme or extravagant wealth or spending was made possible by legitimate means and, if so, the introduction of such evidence would appeal solely to class prejudice. Therefore, the real issue is whether the relevance of motive is outweighed by unfair prejudice as contemplated by Fed.R.Evid. 403 and the due process clause of the Fifth Amendment. As stated in [*United States v.*] *Socony–Vacuum Oil Co.,* "each case necessarily turns on its own facts." 310 U.S. [150] at 240, 60 S.Ct. 811, 84 L.Ed. 1129 [ (1940) ].

*United States v. Jackson–Randolph,* 282 F.3d 369, 378 (6th Cir.2002).

 Besides class prejudice related to spending money for plastic surgery, this case also presents a serious potential for inflaming moral prejudice against the defendants for spending money on gambling and strip clubs. The government has not shown there to be much probative value to this evidence based on the amount, timing and extravagance of these expenditures or based on the defendants having no available legitimate sources of income to make these same expenditures at some level. Nor does the government argue that the defendants' expenditures on these items are unique to the period of the alleged illegal activity. Balancing this evidence under Rule 403, the court concludes that the particularly limited probative value of this evidence is substantially outweighed by the unfair prejudice related to class and inflammatory moral issues.

## DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF DEFENDANTS' PRIOR BUSINESS ACTIVITIES IN CERTAIN CORPORATIONS (Dk.170)

 The defendants seek an order that limits the government to offering evidence of the following businesses: Midwest Health Care Providers, Inc., Total Body and Fitness, Inc., and HCL Enterprises, Inc., and that bars the government from offering evidence of the following businesses: Infinity Medical Supply, Inc. (a/k/a Infinity Latex Supply, Inc.), Infinity Medial Products, Inc., and Crown Health Care Corporation. The defendants argue the evidence regarding these latter businesses is not relevant and the potential for unfair prejudice from this evidence outweighs any probative value. The defendants accuse the government of wanting to introduce character evidence, that is, the defendants' failure in the current businesses was in conformity with the defendants' failures in these prior businesses. The defendants deny any wrongdoing in their relationship to these prior businesses and specifically deny anything illegal by reason of their relationship to these businesses.

The government responds that this evidence of the defendants' prior businesses is necessarily intertwined with the story of the defendants' scheme to defraud. The government believes evidence of the prior businesses is relevant for several reasons. First, the government wants to show why the defendants were forced to begin Midwest using the name of a relative because of their own poor credit histories. Without credit from Invacare, Midwest could not have started. Second, the defendants' prior businesses also were conducted with Medicare making them knowledgeable of Medicare and its rules and regulations. Third, the prior businesses establish a history of the defendants' business interrela-

tionships. Fourth, the defendants' poor credit history explains their inability to obtain financing from banks or other third parties to pay the Invacare debt. Fifth, Invacare's discovery of the defendants' poor credit histories explains Invacare's decision to stop shipping products to Midwest. Finally, the government seeks to use this evidence to prove the defendants' intent to perpetrate a fraud by setting up a business that was not legitimate, to rebut the defendants' asserted defense of innocent mistake, and to establish the defendants' pattern of business activities.

The court finds that the government has shown several grounds for the relevance of the defendants' association and employment with prior businesses and the financial difficulties experienced by the defendants and those businesses. The most significant ground relates to the charges in count fourteen and the allegation of wire fraud concerning the personal guaranties of the defendants. The defendants' financial histories and their prior failed business ventures bear directly on the defendants' knowledge that they would not have access to sufficient funds to repay Invacare Corporation. The prejudice and confusion related to this evidence of prior businesses does not substantially outweigh its probative value in proving the charges in this case.

## DEFENDANTS' MOTION TO EXCLUDE EVIDENCE OF FAILURE TO FILE INCOME TAX RETURNS OR FORFEITURE OF ARTICLES OF INCORPORATION (Dk.174)

■ By this motion, the defendants seek to bar the government from introducing at trial evidence or argument that the defendants failed to file 1998 or 1999 income tax returns or that the businesses forfeited their Articles of Incorporation. The defendants note that the government has twelve exhibits that "are either forfeiture of Articles of Incorporation or Certifi-

cates of Lack of Record as to income tax returns." (Dk.174, p. 1). The defendants deny any relevance to these exhibits and argue inadmissibility under Rule 403. The government did not file a separate response to this motion but incorporated its arguments into its response filed to the defendants' motion regarding their prior businesses.

The government's response fails to establish the relevance of the defendants' businesses not filing income tax returns for 1998 and 1999 or of the defendants' businesses subsequently forfeiting their Articles of Incorporation. The government has not shown how these events are relevant in proving the defendants' intent to defraud Medicare and Invacare from January of 1996 through December of 1998. That Midwest did not file income tax returns after the dates of the alleged offenses and then forfeited its Articles of Incorporation does not appear to be probative of any issue of consequence to the charges or defenses in this case. Even assuming some arguable showing of possible probative value, the court concludes such value would be substantially outweighed by the potential for unfair prejudice from portraying the defendants as persons who avoid tax responsibilities. The court grants the defendants' motion as it concerns evidence that the defendants' businesses failed to file 1998 or 1999 income tax returns and the businesses forfeited their Articles of Incorporation subsequent to the dates of the alleged offenses.

## DEFENDANTS' MOTION TO PRECLUDE GOVERNMENT FROM OFFERING EXPERT TESTIMONY THAT CERTAIN CONDUCT IS FRAUD (Dk.175)

Charged principally with health care fraud, wire fraud, and conspiracy to commit fraud by "upcoding" or wrongly coding

durable medical equipment for reimbursement from Medicare, the defendants argue the government's experts are slated to testify that certain activities constitute "fraud" when an element to these crimes of fraud is that the defendant intended to defraud. Rule 704(b) of the Federal Rules of Evidence provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Based upon the government's notice of expert witness testimony, the defendants anticipate that nine of the government's expert witnesses will testify that the defendants committed fraud.

In response, the government offers that its witnesses will not be offering opinions regarding the defendants' mental states or intent but will offer opinions on whether certain activities are fraudulent. The government. argues "it is now completely proper under Rule 704 for an expert to offer the opinion that a certain transaction is fraudulent, or to offer testimony about the structure of the fraudulent scheme, or to offer testimony about how a scheme operated and succeeded." (Dk.192, pp. 1–2). The government reads Rule 704(b) as barring only a direct statement that the defendant did or did not have the required mental state.

■ "Rule 704(b) does not prohibit an expert witness from stating his opinion and reviewing facts from which a jury could determine whether a defendant had the requisite criminal intent." *United States v. Orr,* 68 F.3d 1247, 1252 (10th Cir.1995) (citing *United States v. Richard,* 969 F.2d 849, 854–55 (10th Cir.), *cert. denied,* 506 U.S. 887, 113 S.Ct. 248, 121

L.Ed.2d 181 (1992)), *cert. denied,* 516 U.S. 1064, 116 S.Ct. 747, 133 L.Ed.2d 695 (1996). The rule does prohibit "an expert witness from testifying that a defendant did or did not possess the requisite mental intent at the time of the crime." *Id.* (citations omitted). In *Orr,* the defendant was charged with a check kiting scheme to artificially inflate account balances at a bank, and the government's expert testified that in his opinion the "scheme would succeed only if the business were very successful or if it continued to find 'a bank sucker.'" *Id.* "Although the jury could have inferred defendant's criminal intent from these statements, Woody [the government's expert] did not testify that defendant had the requisite criminal intent for fraud." *Id.*

In *United States v. Wood,* 207 F.3d 1222 (10th Cir.2000), a physician with the Veterans Administration Hospital in Oklahoma was convicted of involuntary manslaughter after administering an injection of potassium chloride at too high of a concentration over too short of a period that resulted in the patient's death. The defendant on appeal objected that the government's expert, Dr. Baden testified in violation of Rule 704(b) when he opined:

> Dr. Baden first testified that "[m]y opinion would be the manner of [Dykes's] death is homicide." (IV R. at 443) (emphasis added). He had earlier defined homicide as occurring "when the death is caused at the hands of another person," (IV R. at 441), and gave the example of "where a doctor, for one reason or another, has intentionally injected potassium to end a person's life as a euthanasia type of situation," (Id.) (emphasis added). He thus ruled out the other manners of death: natural, accident, suicide, or undetermined. Elaborating on this conclusion, Dr. Baden testified that a death classified as a homicide is distinct from an accident because the former involves intentional action "that was

reckless and that would predictably cause the death of the patient." (IV R. at 483.) He then went on to make the following statement:

My opinion is that the injection of potassium, the way it was done, was not warranted from a clinical point of view, was extremely dangerous, was beyond reasonable medical treatment because it can cause death, and it did in fact cause death. It was reckless in the sense of not being a reasonable action on the part of the physician, which was fraught with the perils of causing death.

(Appellant's Br. at 40).

207 F.3d at 1235–36. The Tenth Circuit found this testimony violated Rule 704(b) for the following reasons:

These statements "expressly draw the conclusion or inference" that Dr. Wood acted with the necessary mens rea when he caused Dykes's death. *Richard,* 969 F.2d at 855. The district court instructed the jury that to convict Dr. Wood on charges of first or second-degree murder, it was required to find that he possessed the specific intent to cause harm or death to Dykes. By his testimony that Dr. Wood's actions caused Dykes's death, Dykes's death was a homicide, and a homicide involves the intentional taking of a person's life, Dr. Baden expressly inferred that Dr. Wood acted with specific intent to kill Dykes. Similarly, Dr. Baden's testimony that Dr. Wood's actions were reckless specifically describes the mens rea for involuntary manslaughter. As discussed, the mens rea for involuntary manslaughter is "without due care and circumspection," 18 U.S.C. § 1112, or "gross negligence," *Bryant,* 892 F.2d at 1470. In its instructions to the jury, the district court accurately defined "gross negligence" as "a wanton, reckless, indifferent or conscious disregard for human life or the safety of others." (VIII R. at

1406) (emphasis added). This testimony by Dr. Baden, while not cast in precisely the same terminology as the statute, case law, or instruction, recites the critical components they identify. He states in no uncertain terms that Dr. Wood's actions were "reckless" because they were "fraught with the perils of causing death." (IV R. at 446.) This is substantively indistinguishable from the instruction that the mens rea for involuntary manslaughter is met if the defendant's actions demonstrate a "reckless . . . disregard for human life . . . ." (VIII R. at 1406.) Therefore, Dr. Baden's testimony does not merely provide "the facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *Richard,* 969 F.2d at 855. If believed, his testimony necessarily dictates the final conclusion that Dr. Wood possessed the requisite mens rea for involuntary manslaughter. See *United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir.1997) ("A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.") This intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent. See *United States v. Dennison,* 937 F.2d 559, 565 (10th Cir. 1991) (holding the trial court properly excluded testimony from an expert that a hypothetical person suffering from the same mental disorder as the defendant could not form the specific intent to commit assault); *United States v. Windfelder,* 790 F.2d 576, 582 (7th Cir.1986) (holding that it was error to admit into evidence an IRS agent's testimony that the defendant intentionally understated his income).

207 F.3d at 1236.

The government relies on the case of *United States v. Owens,* 301 F.3d 521 (7th

Cir.2002), in which the defendant was convicted of a multi-million dollar real estate and mortgage fraud scheme in which distressed property was purchased for cash at very low prices and then resold at higher prices using inflated appraisals to buyers who were furnished false documents so that they could mortgages. The defendant objected to the government's expert testifying that the appraisal reports were fraudulent and misleading. The appeals court characterized the testimony as using the phrase, " 'misleading and fraudulent' to describe the quality of the appraisal reports, and thus never commented directly on Owen's state of mind." 301 F.3d at 527 (citing in part 29 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6285, at 395 (1997)) ("Rule 704(b) usually bars only a direct statement that defendant did or did not have the required mental state.") The Tenth Circuit's approach to Rule 704(b), as demonstrated in *Wood,* appears to differ from that embraced in *Owens.* It was a violation of 704(b) in *Wood* for an expert to label the defendant's activity as "reckless" using language directly constituting the intent element of the charged offense, but it was not a violation in *Owens* for an expert to describe a document prepared by the defendant as "fraudulent" using language directly constituting the intent element of charged offenses.

■ The government's notice of expert witnesses summarizes the testimony and opinions to be offered through ten expert witnesses. The court understands the defendants' motion to be addressing those opinions which the government has summarized in terms similar to these: "billing separately for a battery charger is fraud;" and "billing Medicare prior to delivery is fraud." The term, "fraud," is a legally specialized term which tracks the statutory and common-law language of the intent elements of the offenses with which the defendants are charged. When an expert

witness opines that a defendant's activity is fraudulent, the witness expressly draws the conclusion or inference that the defendant acted with the intent to defraud. Such testimony "does not merely provide 'the facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state.'" *Wood,* 207 F.3d at 1236 (quoting *United States v. Richard,* 969 F.2d at 855). Rather, if believed, this testimony would necessarily dictate the conclusion that the defendant acted with the intent to defraud. As the Tenth Circuit in *Wood* held, "[t]his intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent." *Id.* The court grants the defendants' motion insofar as the government witnesses shall not express an opinion that an activity or a defendant's activity is "fraud" or "fraudulent."

### DEFENDANTS' MOTION TO PRECLUDE GOVERNMENT FROM OFFERING EVIDENCE THAT CUSTOMERS SUFFERED MEDICAL CONSEQUENCES FROM EQUIPMENT (Dk.176)

■ The defendants seek to exclude evidence or argument that the customers of Midwest suffered negative health problems as a result of equipment sold by Midwest. The defendants argue such evidence would be speculative, unfairly prejudicial and irrelevant to the charges. During a video deposition taken of one of the government's expert witnesses, the government elicited testimony that a person using a wheelchair with insufficient cushioning may develop decubitus ulcers. The defendants say they are unaware of any Midwest customers suffering an ulcer as a result of an insufficient cushion supplied by Midwest. The defendants argue that testimony or arguments about such alleged

physical harm to Midwest customers would be inflammatory.

The government contends that Medicare beneficiaries are also victims of the defendants' alleged fraud and that the jury should hear all of the consequences flowing from the fraud. The government argues such evidence is also relevant in showing that the defendants cared little about the medical needs of their customers and that they operated their business with the intent to make money rather than "to operate a legitimate Medicare durable medical equipment business." (Dk.191, p. 2). The government also argues this is direct evidence of fraud in showing that the beneficiaries were defrauded by receiving inappropriate wheelchairs and were unable to receive replacement wheelchairs until five years had passed.

The probative value of this evidence as argued by the government is, at best, quite limited. The medical consequences to Midwest customers from the alleged fraudulent activities may be part of the whole story, but this evidence does not tend to prove the existence of the financial motive behind the intent to defraud that is alleged in this case. This is not a case where the defendants are accused of engaging in fraudulent transactions for the motive of causing physical harm to Midwest's customers. The principal direct victims of the alleged scheme to defraud are Medicare and Invacare, and the alleged motive is financial gain. That Medicare beneficiaries may have suffered collateral medical consequences from the alleged conduct is not relevant in proving the alleged financial motive and intent to defraud. As far as the probative value of this evidence in telling the whole story, the court is persuaded that this evidence carries the potential of being inflammatory and could influence a jury into placing undue significance on the possible physical harm done to unsuspecting Medicare beneficiaries.

Such evidence also would lengthen the trial with evidence regarding medical causation and the presence or absence of beneficiaries with actual medical consequences. Thus, the court concludes that the probative value of this evidence is substantially outweighed by relevant Rule 403 considerations, including unfair prejudice to the defendants.

## DEFENDANTS' MOTION AND RESPONSE TO GOVERNMENT'S NOTICE OF EXPERT WITNESSES (Dk.178)

The defendants seek an order to limit the government's proffered expert testimony as unnecessarily cumulative. The defendants point out that the government's notice of expert testimony indicates that government intends to have most of its ten experts testify on common issues, such as the appropriate code for particular cushions and whether a particular activity is upcoding or fraud. The defendant complains that repetitive testimony would add little or nothing to the probative force of other evidence, would cause delay, would waste time, and could have a "damning effect" should the jury tend to find the testimony more credible simply because they heard it more times.

The government says the defendants' motion is premature in that the testimony is not yet cumulative. The government also characterizes its repetitive testimony as going to "heart of its case." The government denies any unfair prejudice to the defendants from the repetitive testimony. Finally, the government makes the rather tenuous argument that the fact it is able to present numerous witnesses who agree on the interpretation and application of Medicare rules and regulations will "defeat the 'Medicare is so confusing' defense." (Dk.197, p. 3).

The court takes this motion under advisement and reserves its ruling for those

objections made during trial. The court intends to enforce the Federal Rules of Evidence and will strike cumulative testimony that is needlessly presented.

## DEFENDANTS' MOTION TO PRECLUDE GOVERNMENT FROM OFFERING TESTIMONY ABOUT EXTRANEOUS EVENTS INVOLVING MS. SOERRIES AND THE PROSECUTOR (Dk.187)

The defendants seek an order precluding the prosecution from eliciting any testimony from their expert, Sandy Soerries, about an extraneous dispute involving Ms. Soerries and Ms. Treadway, the assistant United States Attorney prosecuting this case. The government responds that it will not cross-examine Ms. Soerries about this matter. Based on the government's response, the court denies the motion as moot.

## DEFENDANT TERENCE COOPER'S MOTION TO DISMISS GOVERMENT'S MOTION IN LIMINE ON RELIGIOUS BELIEFS AND FOR DISCOVERY OF GOVERNMENT'S SOURCE OF INFORMATION (Dk.188)

 In this motion, the defendant Terence Cooper seeks an order precluding government witnesses from testifying about any "excessive religiosity" by him and requiring the government to disclose the source of this erroneous information. The defendant argues such mistaken information could have impeachment value against the witness who provided the government with it. The defendant seeks the opportunity to cross-examine the witness on this subject and to show the witness is an unreliable reporter of related information.

The government states that it considers the information irrelevant and that its pleading was "based on factual information gained during discovery, typically from multiple sources." (Dk.197, p. 2). The government denies that this is *Brady* material simply because the defendant now disputes the factual representation.

 Because the government does not intend to offer this evidence, the defendant Cooper's motion in limine is denied as moot. The court also denies the defendant's request to learn the source of the government's information about the religious beliefs of the defendants. Impeachment evidence falls within the *Brady* rule when the reliability of a given witness may be determinative of the defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Impeachment evidence is material if it tends to undermine the credibility of an important government witness. *United States v. Alex*, 791 F.Supp. 723, 730 (N.D.Ill.1992). That a government witness or witnesses believed the defendants, in particular Frank Heck, had professed to be strongly religious, a proposition which the defendant Terence Cooper personally denies, is not impeachment evidence which this court would consider material. In the court's judgment, cross-examination about what the defendant Cooper argues is an erroneous impression of his religious convictions and, thus, an erroneous representation about him would not tend to undermine a witness's credibility. In addition, the ambiguity in the government's stated information, particularly as it relates to the defendant Cooper, does not make this a meaningful topic for impeachment. The defendant Cooper's request is denied.

## DEFENDANTS' MOTION TO PRECLUDE FURTHER GOVERNMENTAL INTERFERENCE WITH DEFENSE INVESTIGATION (Dk.189)

The defendants seek an order barring the government from further interference with the defense investigation and preparation for trial. The defendants argue one government witness is reluctant to speak

with defense counsel, because she is intimidated by information supplied by the government about a defense in this case. The defendants want the government to stop discouraging witnesses from talking with the defense. The defendants say they have attempted to interview the owner of a billing company used by Midwest during the relevant period and she "expressed extreme reluctance to talk with the defense because, in part, she had been told by the government that the defendants blamed her for the alleged wrongdoing." (Dk.189, p. 1). The defendants also complain about Ms. Treadway's letter accusing Ms. Soerries of slandering her and her husband and suggest this "could easily be construed as an effort to intimidate the expert witness from testifying in this case or from criticizing the government's case in any way." (Dk.189, p. 2).

The government denies that it discouraged Ms. Madison from talking with defense. As to Ms. Madison's knowledge about the defendants blaming her for the upcoding, the government offers that this possible defense was discussed with Ms. Madison prior to her grand jury testimony as an explanation for the need of her testimony and that Ms. Madison's testimony before the grand jury rebutted this defense. The government further notes that Ms. Madison is under no obligation to speak with the government or the defense, that it told her she was "in complete control" of deciding to whom she would speak, and that it never informed her or directed her to obtain the government's permission before speaking with the defense. The government says it did not discourage Ms. Madison and has not discouraged any witness from speaking with the defense. As for the Ms. Treadway's letter to the court regarding the dispute with Ms. Soerries, the government offers the letter was written upon the advice of her office's ethics advisor and supervisor.

The court believes Ms. Madison's reticence and reluctance for speaking with defense is not the result of any alleged effort by the government to discourage her by disclosing unnecessary or unrelated information to her about the defendants' possible defenses prior to her grand jury testimony. The allegations in the defendants' motion afford no factual basis for finding that the government's actions were carried out with the intent of discouraging any government witnesses from talking with the defense or discouraging any defense witness from so testifying. The court denies the defendants' motion.

## GOVERNMENT'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERTS (Dk.203) and GOVERNMENT'S PROFFER REGARDING CO-CONSPIRATOR STATEMENTS (Dk.207)

The court takes both matters under advisement and directs the defendants to file their responses, if any, no later than noon on September 29, 2003.

IT IS THEREFORE ORDERED that the Government's Motion to Exclude Exculpatory Tape Recorded Statements of Defendant Frank Heck (Dk.166), and the Government's Motion to Exclude Evidence Relating to Defendants' Religious Beliefs or Opinions (Dk.167) are granted;

IT IS FURTHER ORDERED that the Defendants' Request and Response to Government's 404(b) Notice (Dks. 168 and 177) is denied as to ¶¶ 1, 2, 3, 4, 5, 6, 7 and 11 of the Government's 404(b) Notice but the Government shall furnish the defendants within one week of this order a letter that identifies the specific exhibits and supporting documentation that evidences each transaction and/or other act described in those paragraphs that the government intends to offer at trial; and that the defendants' request to exclude the

evidence of other acts described in ¶¶ 8, 9 and 10 is granted;

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Evidence of Defendants' Personal Expenditures (Dk.169) is granted;

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Evidence of Defendants' Prior Business Activities in Certain Corporations (Dk.170) is denied;

IT IS FURTHER ORDERED that the Defendants' Motion to Exclude Evidence of Failure to File Income Tax Returns or Forfeiture of Articles of Incorporation (Dk.174) is granted as to evidence that the defendants' businesses failed to file 1998 or 1999 income tax returns and the businesses forfeited their Articles of Incorporation subsequent to the dates of the alleged offenses;

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Government from Offering Expert Testimony That Certain Conduct is Fraud (Dk.175) is granted insofar as the government witnesses shall not express an opinion that an activity or a defendant's activity is "fraud" or "fraudulent";

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Government from Offering Evidence That Customers Suffered Medical Consequences From Equipment (Dk.176) is granted;

IT IS FURTHER ORDERED that the Defendants' Motion and Response to Government's Notice of Expert Witnesses (Dk.178) is taken under advisement and reserves its ruling for those objections made during trial;

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Government From Offering Testimony About Extraneous Events Involving Ms. Soerries and the Prosecutor (Dk.187) is denied as moot;

IT IS FURTHER ORDERED that the Defendant Terence Cooper's Motion to Dismiss Government's Motion in Limine on Religious Beliefs and for Discovery of Government's Source of Information (Dk.188) is denied;

IT IS FURTHER ORDERED that the Defendants' Motion to Preclude Further Governmental Interference with Defense Investigation (Dk.189) is denied;

IT IS FURTHER ORDERED that the Government's Motion to Exclude Testimony of Defendants' Experts (Dk.203) and the Government's Proffer Regarding Co-Conspirator Statements (Dk.207) are taken under advisement and directs the defendants to file their responses, if any, no later than noon on September 29, 2003.